PRESENT: Carrico, C.J., Hassell, Keenan, Koontz, Kinser, and
Lemons, JJ., and Stephenson, S.J.

ADRIAN DARRYL WARD
                                          OPINION BY
v.  Record No. 020200    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.

                                     November 1, 2002
COMMONWEALTH OF VIRGINIA


                 FROM THE COURT OF APPEALS OF VIRGINIA

     The two issues presented in this appeal are:  (1) whether

the trial court erred in allowing an expert to testify that a

rape victim suffered from post-traumatic stress disorder, and

(2) whether the evidence is sufficient to prove that the accused

committed rape and sexual battery.

                                I

     In a bench trial in the Circuit Court of Henrico County,

Adrian Darryl Ward was convicted of rape and sexual battery.  He

was sentenced to 40 years' imprisonment with 25 years suspended

for the rape and to a suspended 12-month sentence for the sexual

battery.  The Court of Appeals denied Ward's petition for

appeal; however, on May 3, 2002, we awarded him this appeal.

                                II

     According to well-established precedent, we will view the

evidence and all reasonable inferences to be drawn therefrom in

the light most favorable to the Commonwealth, the prevailing

party at trial.  On June 16, 2000, the victim was admitted to

the Manor Care Nursing Home.  She was 61 years old and recently

had suffered a stroke.  She was in a semi-private room, and her bed was farthest from the hall door.

The victim's sister visited the victim at the nursing home every day.  On June 23, between 7:55 and 8:00 p.m., the sister arrived at the nursing home for a visit.  The sister first noticed that the door to the victim's room was completely shut, which was unusual.  The sister testified that, as she pushed the door open, "the curtain to the bed beside the door was curved around to the end of the bed, so that it was in the way of the door."  When the sister asked why the door was shut, she heard a male voice say, "Wait outside."  The sister looked into the mirror at the foot of the victim's bed and saw Ward washing the victim's lower abdomen and the top of her pubic area "very slowly and carefully . . . just real slowly."

The sister and her husband then waited outside the room. Fifteen to 20 minutes later, Ward came out of the room and told the sister and her husband that they could enter.

When the sister entered the room, she noticed that the victim "was wide awake, her eyes were darting all over the room, and she was very nervous and afraid."  The sister had never seen the victim in that condition.  When the sister asked whether the victim was all right, the victim responded, "I was raped."

Shortly thereafter, the victim was taken to a hospital emergency room.  An examination performed several hours later revealed that she had extensive and severe redness in her

2

genital area.  There also were numerous areas of tearing and several small hemorrhages.  According to the examiner, the tears could have been caused by scratching or by a penis.  In giving her history, the victim told the examiner that Ward had touched her breasts, through her clothing, touched her genitals, kissed her mouth, and raped her.

At trial, the victim testified that, while Ward had been bathing her, he had washed her breasts "real slowly to feel . . . [her], instead of washing."  She further testified that Ward had then put his penis in her vagina twice and had made her feel his penis with her right hand, which she had very little use of due to the stroke.

When questioned by a police investigator, Ward said that the door to the victim's room had been open because he always left it open.  He claimed that he had spent only ten minutes with the victim and that she had been unclothed for only two or three minutes.  He further stated that a nurse had observed 70 to 90 percent of his bathing of the victim and that he had been alone with her for just two or three minutes.  When the investigator advised Ward that a complaint of rape had been made, he responded that he did not know why, adding that he is "not a premature ejaculator."  When the investigator asked why the victim would make such a complaint, Ward said, "You know, these southern white women, they think all black males are going to mug them, rape them, or kill them."

3

A second police officer also questioned Ward. After reiterating his version of what had transpired in the victim's room, Ward said, "I'm sorry to say I'm not a premature ejaculator." The officer considered the statement to be an "off the cuff statement," so he "jotted it down."

Two nurses at the nursing home testified that the door to the victim's room had been closed when Ward had been bathing the victim. One of the nurses had asked another nurse why the door had been closed.

Dr. Charlotte K. Wenzel, a licensed clinical psychologist, testified that, based upon what the victim had told her, the victim was suffering from post-traumatic stress disorder (PTSD). In discussing the victim's symptoms, Dr. Wenzel stated the following:

> Obviously that she has experienced a traumatic event, that her response to this traumatic event was horror, fear, intense fear, that she had recurring and distressing recollections of the event, that at times she felt as if she were reliving the event, intense psychological distress or exposure of external cues that symbolized the event. . . . [A]voidance, efforts to avoid thoughts, feelings, conversations. Efforts to avoid activities, very fearful of places to go, and an inability to recall an important event of the trauma. That's foremost. Markedly diminished interest in or participation in significant activities. . . . Irritability, outbursts, hypervigilence, exaggerated startled response. A lot of these I have witnessed myself in the course of therapy.

Dr. Evan Stewart Nelson, a licensed clinical psychologist and a specialist in forensic matters, testified on behalf of

4

Ward. He explained the difference between forensic psychology and clinical psychology. He said that a diagnosis by a clinical psychologist can be based strictly on a discussion with a patient, but a forensic psychologist would "seek collateral sources before giving opinions."

### III

Ward contends that the trial court erred in allowing Dr. Wenzel to testify that the victim was suffering from PTSD. He asserts that this testimony was a comment on the ultimate issue of fact, that it improperly bolstered the victim's testimony, and that it was excessively prejudicial.

### A

We first consider Ward's claim that Dr. Wenzel's testimony constituted a comment on the ultimate issue in the case, i.e., whether the victim was raped. We repeatedly have held that an expert's testimony upon the ultimate issue of fact is impermissible because it invades the province of the fact finder. See, e.g., Jenkins v. Commonwealth, 254 Va. 333, 336, 492 S.E.2d 131, 132 (1997); Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992); Bond v. Commonwealth, 226 Va. 534, 538, 311 S.E.2d 769, 771-72 (1984); Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

Ward argues that "the expert should not have been allowed to declare her belief that neither the stroke, nor any other event prior to the alleged rape, was the traumatic event that

5

caused [the victim] to suffer from PTSD." In support of his contention, Ward relies upon our recent decision in Valazquez v. Commonwealth, 263 Va. 95, 557 S.E.2d 213 (2002).

In Valazquez, the defendant was accused of rape. The trial court allowed a medical expert to opine that the victim's physical injuries were "inconsistent with consensual intercourse" and that the expert held that opinion because the injuries were "consistent with non-consensual intercourse." Id. at 100, 557 S.E.2d at 216. We held that the combined testimony "'closed the circle'" and "clearly expressed [the expert's] opinion that [the victim] was raped because [the expert's] opinion excluded all other trauma as the cause of [the victim's] injuries." Id. at 105, 557 S.E.2d at 219. Thus, the expert's opinion improperly invaded the province of the fact finder on the ultimate issue of fact to be decided in the case. Id.

In the present case, however, Dr. Wenzel was not asked, and she did not mention, on direct examination, what she thought could, or could not, have caused the victim's PTSD. It was not until cross-examination that Dr. Wenzel was asked whether suffering a stroke is a traumatic event, and she answered that it is. She also was asked whether being placed in a nursing home is a traumatic event, and she said that "it really depends upon the person." Then, on re-direct examination, Dr. Wenzel was asked if a stroke could cause PTSD, and she responded that, "in the eighteen years that [she had] been a clinical

6

psychologist, . . . [she had] treated lots of stroke victims . . . [and] always diagnosed them as depressed, but never as . . . [suffering from] post traumatic stress disorder."  This answer, while ruling out stroke as a cause of the victim's PTSD, was not an opinion by the expert of what had caused the victim's condition.  Indeed, Dr. Wenzel never discussed rape or any other sexual event.  We conclude, therefore, that Dr. Wenzel did not express an opinion on the ultimate issue in the case.

### B

We next consider Ward's contention that Dr. Wenzel's testimony improperly bolstered the victim's testimony.  We do not agree.

It would have been improper for Dr. Wenzel to comment upon the victim's veracity in order to bolster the victim's credibility.  See Fitzgerald v. Commonwealth, 223 Va. 615, 630, 292 S.E.2d 798, 806 (1982), cert. denied, 459 U.S. 1228 (1983). This, however, did not happen.  Dr. Wenzel simply testified about the victim's mental condition, which was proper.  See Loving v. Commonwealth, 165 Va. 761, 765, 182 S.E. 224, 225 (1935).  Dr. Wenzel's testimony merely tended to corroborate the victim's testimony, in the same way that a doctor's testimony describing a rape victim's physical injuries tends to corroborate the victim's testimony.

### C

Ward further contends that Dr. Wenzel's testimony was so prejudicial that the trial court erred in admitting it into evidence. Generally, evidence is admissible if it is relevant and its probative value outweighs any prejudicial effect. Walker v. Commonwealth, 258 Va. 54, 68, 515 S.E.2d 565, 573 (1999), cert. denied, 528 U.S. 1125 (2000). Expert testimony is admissible upon matters beyond a lay person's common knowledge or experience. Cartera, 219 Va. at 519, 248 S.E.2d at 786.

We agree with the Court of Appeals that "evidence of an emotional or psychological injury such as post traumatic stress disorder, like medical evidence of physical injury, is relevant as circumstantial evidence of the occurrence of a traumatizing event." Taylor v. Commonwealth, 21 Va. App. 557, 565, 466 S.E.2d 118, 122 (1996). While all evidence tending to prove guilt is prejudicial to an accused, we conclude that, in the present case, the probative value of Dr. Wenzel's testimony, which clearly is beyond a lay person's common knowledge, outweighs its prejudicial effect to Ward.

IV

Finally, we consider Ward's challenge to the sufficiency of the evidence. When a defendant challenges the sufficiency of the evidence on appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). We

8

will not disturb the fact finder's verdict unless it is plainly wrong or without evidence to support it. Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 385, cert. denied, 469 U.S. 873 (1984).

Ward argues that the Commonwealth's evidence "was rife with inconsistencies and with evidence which works to the benefit of [Ward]." The record, however, discloses that the trial judge, as the fact finder and the person best able to judge the evidence, carefully weighed and analyzed the evidence. He believed the victim's testimony and noted that it was buttressed by corroborating evidence.

When the evidence in the present case is reviewed in the light of the above-stated principles, we conclude that it is sufficient to support Ward's convictions.

V

In sum, we hold that the trial court did not err in admitting Dr. Wenzel's testimony into evidence and that the evidence is sufficient, as a matter of law, to support Ward's convictions of rape and sexual battery. Accordingly, we will affirm the Court of Appeals' judgment that denied Ward's appeal.

Affirmed.