UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Decker
Argued at Richmond, Virginia

BRYON WARD POSSICH

MEMORANDUM OPINION[*] BY
v.        Record No. 0566-15-1          JUDGE MARLA GRAFF DECKER
MARCH 29, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Michael E. McGinty, Judge

> John D. Konstantinou (Williamsburg Law Group, PLC, on brief), for
> appellant.
>
> David M. Uberman, Assistant Attorney General (Mark R. Herring,
> Attorney General, on brief), for appellee.

Bryon W. Possich appeals his two convictions of taking indecent liberties with a child in

violation of Code § 18.2-370.  He argues that the evidence was insufficient to support the

convictions because the witness testimony against him was not credible.  We hold that the record

supports the jury's findings regarding witness credibility and the evidence of the crimes is sufficient

to support the convictions.  Therefore, we affirm.

I.  BACKGROUND

The victim of both offenses was the young daughter of the appellant and his estranged wife.

The child and her younger brother lived with their mother.  The appellant resided with his mother.

On weekends, the children visited the appellant at his mother's house, until the children's mother

learned of the offenses.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At trial, the victim, who was five years old at the time of the offenses, testified about certain intimate touchings that occurred while she visited the appellant at her grandmother's house.[1] The child circled the male and female genitalia on drawings to identify which body parts she referred to as "wee wee" and "pee pee." She then testified that the appellant asked if he could touch her "pee pee." According to her, after the request he used his finger to touch the "outside" of her "pee pee." The victim also testified that the appellant asked her to touch his "wee wee" and she complied. She described his "wee wee" as being "smooth," "bumpy," "soft," and approximately six inches long. The victim stated that they were alone in the appellant's bedroom when these incidents occurred. When the appellant asked her to touch his penis, he was sitting clothed in bed. After making this request, the appellant removed his clothes.

The child explained that she told her neighbor, "Amy," about the incidents. She said that she did not tell her mother because she was afraid that her mother would be angry with her. During cross-examination, when the child was asked whether she told her neighbor that "the same thing happens" to her little brother, she responded that she did not remember making such a statement. The victim also testified that she loved her father. At the conclusion of her testimony, she asked, "Is it over?"

Amy Aubuchon, a neighbor and friend of the mother, confirmed that the child reported the abuse to her. Aubuchon explained the context of the disclosure. She testified that one day when she was caring for the victim, the child "messed on the toilet seat." As Aubuchon cleaned the bathroom, the victim asked her to apply some diaper ointment "on her bottom." Aubuchon did so with a gauze pad. The child asked her why she used the gauze pad. Aubuchon responded that because she was not her mother, she did not "want to use her bare hand on her." The child asked Aubuchon, "[W]hat about daddies[?]" According to Aubuchon, the victim "kept wanting

---

[1] The trial court ruled that the child was competent to testify.

to talk about mommies and daddies and who's allowed to touch where." The victim then informed her that "her dad had asked to touch her between her legs and that he had her touch him."[2] She also told Aubuchon that the appellant "had asked her to put his wee wee in her mouth." According to Aubuchon, the victim said that she had reported the incident to her grandmother, who had yelled at her. The victim had not told her mother because "[s]he didn't want her mom to be mad at her." Aubuchon alerted the victim's mother, who was at work. The child's mother asked Aubuchon to contact "the child advocate" immediately, and Aubuchon did so.

Aubuchon admitted that she was an eight-time convicted felon. She also explained that she was neither offered nor expecting anything in exchange for her testimony.

The appellant attempted to impeach Aubuchon with a statement she had written the day that she spoke with the victim. The written statement largely corroborated Aubuchon's testimony but contains a few points about which she did not initially testify on direct examination. The statement provides that the child told her that when the appellant asked to touch her, she said no. According to the statement, the child complained that her brother "did not like it when his father was naked" and that "daddy do[es] things with" her brother, as well. However, Aubuchon clarified that the child did not specify what the appellant "did to" her brother.

The victim's mother testified that she had noticed a change in her daughter's demeanor over the course of the preceding year, after the offenses first occurred but before the mother had learned about them. Each time she took her daughter to the appellant's residence, the child would cry, scream, and beg her mother "not to leave her." At the time, the mother thought that

---

[2] During her testimony, Aubuchon did not specify where the child said the appellant asked her to touch him, but Aubuchon's written statement, admitted into evidence, identified the appellant's "wee wee" as the location.

her child's anxiety was caused by a change in her school situation. The mother confirmed that she first learned of the allegations of sexual abuse through Aubuchon. According to the mother, she never told her daughter what to say to anyone or how to testify. She explained further that one of the investigators had instructed her not to talk with her daughter at all about the incidents because "[i]t could be misconstrued as [her mother] telling her what to say."

Officer Brittany O'Bryant of the Williamsburg Police Department participated in the investigation of the offenses and spoke with the victim on six occasions prior to trial, between December 2013 and April 2014. O'Bryant testified that the child did not want her mother to know about the sexual abuse because she was afraid that her mother would be mad at her. The officer explained that during her first meeting with the victim, the child said that she was afraid when the appellant physically picked her up "because he was drunk" and she was worried that he would drop her. When asked to name the members of her family, the child omitted her father and her paternal grandmother. The child did not tell O'Bryant about any sexual abuse until their second meeting. At that time, she disclosed to O'Bryant that the appellant touched "her body" and she had touched his "wee wee." The officer acknowledged that in some respects, the child's various accounts over the course of the investigation differed. For example, during one meeting, the child "held up four fingers indicating" that "she touched her daddy's wee wee" four times. Another time, she said that the touching happened only once.

Tina Sawyer, the supervisor of the Child Protective Services Division of James City County Social Services, also met with the victim. Sawyer testified that the child told her that when the appellant asked her to touch his "wee wee," she told him no, but that when she "accidentally" touched it, his "wee wee" felt "squishy." The victim also told Sawyer that when her father asked to touch her vaginal area, she told him no. Regarding the incidents, the child informed Sawyer "it always happened" when she went to her grandmother's house. She said that

she told her grandmother about it once. According to Sawyer, the child indicated that if sexual abuse was to happen again, she would not tell her mother because "[s]he was afraid that her mother would be mad at her."

The appellant presented evidence in his defense. He played for the jury a video of an interview with the victim's brother. During the interview, the brother said that he had never been touched in his genital area or seen anyone else touched in theirs. The appellant also showed the jury a video of Sawyer's interview with the victim. The recording of the victim's interview was consistent with Sawyer's testimony.

Jennifer Possich, the appellant's mother, testified on his behalf. She denied that the victim had ever complained to her about inappropriate touching by the appellant. Possich also testified that the victim's mother had told her that the appellant was "controlling her" and "she was going to fix it." Mrs. Possich said that the appellant spent almost all of his time in his bedroom and that the victim went into his room for less than one minute at a time. However, on cross-examination, she admitted that she left the children alone with the appellant on "rare occasions" while she ran errands.

The appellant also testified, unequivocally denying the accusations. He stated that he had never "ask[ed] to touch" his daughter and had never asked her to touch his penis. In addition, he averred that there was no "oral sex involved." Further, he testified that he was alone with his daughter "[v]ery infrequently" and for only two minutes at most. On cross-examination, he admitted that he had told a police investigator that he was "never" alone with his daughter but said that he had meant "almost never."

The jury found the appellant guilty of both counts of taking indecent liberties with a child. He was sentenced to incarceration for a total of eleven years.

## II. ANALYSIS

The appellant argues that the evidence was insufficient to prove that he took indecent liberties with his daughter because the testimony supporting the allegations was incredible.[3] His challenge rests on the credibility of the victim's testimony as well as that of Aubuchon and the victim's mother. In support of his claim, the appellant relies on inconsistencies in the victim's statements, including how many times the abuse occurred, the specific nature of the touching, whether her brother was similarly abused, and whether she reported the abuse to her paternal grandmother.

The appellant was convicted under Code § 18.2-370. That statute provides, in pertinent part, that anyone eighteen years of age or older is guilty of taking indecent liberties with a child if he or she:

> with lascivious intent, knowingly and intentionally . . . [e]xpose[s] his or her sexual or genital parts to any child [under the age of 15 years,] . . . propose[s] that any such child expose his or her sexual or genital parts[,] . . . [p]ropose[s] that any such child feel or fondle . . . the sexual or genital parts of such person[,] or propose[s] that such person feel or fondle the sexual or genital parts of any such child.

We review the challenge to the sufficiency of the evidence under well-established legal principles. In our analysis, we consider "the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Molina v.

---

[3] To the extent that the appellant separately challenges the measure of proof supporting the element of lascivious intent, we hold that the issue is procedurally barred because he did not raise it below. See Rule 5A:18. The appellant's motion to strike was limited to challenging the witnesses' credibility. Further, he did not contest the element of intent in his motion to set aside the verdict. Consequently, Rule 5A:18 prevents the appellant from now challenging the element of lascivious intent on appeal. See, e.g., Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997). Although the rule provides narrow exceptions for good cause shown or to meet the ends of justice, neither of which was suggested by the appellant, we conclude that based on the record neither of these exceptions applies. See Andrews v. Commonwealth, 37 Va. App. 479, 494, 559 S.E.2d 401, 409 (2002); Redman, 25 Va. App. at 221, 487 S.E.2d at 272.

Commonwealth, 272 Va. 666, 675, 636 S.E.2d 470, 475 (2006) (quoting Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002)). We will affirm the verdict unless the fact finder was "plainly wrong" or the conviction lacked "evidence to support it." Id. at 675-76, 636 S.E.2d at 475 (quoting Ward, 264 Va. at 654, 570 S.E.2d at 831). This Court does not "substitute [its] own judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The law is clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see these witnesses as they testify. Burnette v. Commonwealth, 60 Va. App. 462, 476, 729 S.E.2d 740, 746 (2012). "The conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Johnson v. Commonwealth, 58 Va. App. 303, 315, 709 S.E.2d 175, 181 (2011) (alteration in original) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)).

A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements. The law makes clear that testimony may be contradictory or contain inconsistencies without rising to the level of being "inherently incredible" as a matter of law. Juniper, 271 Va. at 415, 626 S.E.2d at 417 (facts such as delayed reporting or giving inconsistent statements during an investigation do not necessarily render a witness' testimony "unworthy of belief," but instead are appropriately weighed by the jury as part of its determination of credibility of the witness); Fordham v. Commonwealth, 13 Va. App. 235, 240, 409 S.E.2d 829, 832 (1991) ("Prior inconsistent testimony is a factor in determining the credibility of a witness, but it does not automatically render the witness' testimony incredible."); see, e.g., Crump v. Commonwealth, 20 Va. App. 609, 619, 460 S.E.2d 238, 242 (1995) (holding that the inconsistencies in the testimony of the victim and her mother did not "render the evidence incredible as a matter of law"). Consequently, "[p]otential inconsistencies in testimony are resolved by the fact finder," not the appellate court. Towler v. Commonwealth, 59 Va. App. 284, 292, 718 S.E.2d 463, 467 (2011). "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient to maintain the[] verdict, . . . [i]f the trier of facts . . . base[d] the verdict upon that testimony," even if that "witness' credit [was] impeached by contradictory statements." Smith v. Commonwealth, 56 Va. App. 711, 718-19, 697 S.E.2d 14, 17 (2010) (quoting Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989)).

We first address the sufficiency of the victim's testimony. It is well established that a conviction for a "sexual offense[] may be sustained solely upon the uncorroborated testimony of the victim." Wilson v. Commonwealth, 46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005).

> The reason for the rule is the typically clandestine nature of the crime. There are seldom any witnesses to such an offense except the perpetrator and the victim. . . . Thus, it is clear that the victim's

testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction.

Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984).

The appellant's six-year-old daughter testified that he asked her to touch his "wee wee" and she complied. She described his "wee wee" as being "smooth," "bumpy," and six inches long. These details lent credibility to her report because they would not typically be known to a six-year-old child. Additionally, the victim testified that the appellant asked to touch her "pee pee." The child circled the male and female genitalia on drawings to identify which body parts she referred to as "wee wee" and "pee pee." The jury also heard testimony about inconsistent statements made by the child. However, none of the inconsistent statements by the victim involved her equivocating about whether the appellant *asked* her to touch his penis or whether he *asked* to touch her vagina.[4] The child gave clear descriptions of the body parts and the requests in her testimony, which was that of a scared, embarrassed, naïve child.

Contrary to the appellant's suggestion, the child's testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief. Compare Nobrega v. Commonwealth, 271 Va. 508, 513, 519, 628 S.E.2d 922, 924, 927 (2006) (holding that the victim, who was seven years old when she was first raped, was not inherently incredible and that her testimony alone was sufficient to support the convictions), and Love v. Commonwealth, 18 Va. App. 84, 89-90, 441 S.E.2d 709, 712-13 (1994) (affirming convictions where the child victim delayed seven years before reporting the offenses), with Willis & Bell v. Commonwealth, 218 Va. 560, 563-64, 238 S.E.2d 811, 813 (1977) (holding that the witness' account of the crime was "incredible as a matter of law" because her testimony was "replete with contradictions and inconsistencies" as well as "contrary to human experience"). The record makes clear that the

_____

[4] The child initially told Sawyer nothing happened, but according to Sawyer, she then "clarif[ied]" the statement.

- 9 -

appellant's illicit requests provided the bases for the charges, and the child victim's testimony specifically describing the acts of sexual abuse entirely supported the convictions.

The credibility of the victim's trial testimony, which was sufficient on its own, was corroborated by her out-of-court complaints. See, e.g., Wilson, 46 Va. App. at 83, 615 S.E.2d at 505 (explaining that an out-of-court complaint made by a victim of sexual assault is admissible as corroboration of her testimony but not as independent evidence). The fact finder could reasonably have concluded that the variations among the victim's complaints to others who testified resulted from her comfort level with the various people in whom she confided or with whom she spoke during the investigation. It is entirely reasonable that the child victim might confide more freely and with more detail in a babysitter rather than strangers. It is also logical that the more comfortable she felt with a stranger over time, the more detailed the information she would reveal. Further, the passage of time easily explains the child victim being hesitant, inconsistent, or unable to recall certain details when discussing with professionals the intimate encounters with her father.

The context of the initial complaint that the child made to Aubuchon was a setting in which she felt comfortable and the subject arose freely and spontaneously based on Aubuchon's innocuous explanation for using gauze when touching the victim's body. Further, to the extent that the victim also spoke about other sexual acts committed by her father against her when talking about the charged offenses with others, prior truthful accusations bolster a witness' credibility rather than discredit it.[5] See Roadcap v. Commonwealth, 50 Va. App. 732, 740, 653 S.E.2d 620, 624 (2007).

---

[5] The fact that additional charges were not brought against the appellant relating to the victim's other accusations does not compel the conclusion that they were false. See, e.g., Gray v. Commonwealth, 233 Va. 313, 331, 356 S.E.2d 157, 167 (1987) ("The institution of criminal charges is a matter of prosecutorial discretion.").

Additional evidence corroborating the child's testimony and statements to others specifically describing the sexual abuse was her general statement that she loved her father coupled with her failure to include him and her paternal grandmother when asked to name her family members early in the investigation. This evidence supports an inference that she had conflicting feelings about them due to the sexual abuse. Nevertheless, the child confirmed at trial that she loved her father and wanted the trial to be over. The fact that the prosecution chose to offer the child's testimony over closed-circuit television showed an independent assessment that testifying was difficult and traumatic for the young victim. These facts reflect confusion of a child of tender years who does not want to hurt her father and yet knows that he did something wrong.

Based on the record, a reasonable fact finder with all of the evidence before it could easily determine that the inconsistencies in the victim's various statements arose from her youth, her fragile memory, the time span of the investigation, the traumatic nature of the offenses, the fact that the assailant was her own father, and her feelings of complicity as demonstrated by her reluctance for her mother to learn of the abuse. See Smith, 56 Va. App. at 719, 697 S.E.2d at 18 ("[A] 'victim's youth, fright and embarrassment [may] provide[] the jury with an acceptable explanation' for a victim's otherwise unexplainable statements or actions." (alterations in original) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1982))); see also Fisher, 228 Va. at 298-300, 321 S.E.2d at 203-04 (affirming conviction where the evidence included testimony of the ten-year-old victim that she delayed reporting the abuse in part because "she 'didn't want to hurt mama'"). The child's testimony was neither inherently incredible nor so contrary to human experience as to render it unworthy of belief. Consequently, we, as an appellate court, are bound by the jury's finding that she was credible. This conclusion

was wholly supported by the record. Therefore, the child's account alone was sufficient to prove the offenses, despite the appellant's claims about inconsistencies among her various statements.

Additionally, evidence from witnesses other than the child victim supports her accounts of the offenses. Her mother testified that her child's demeanor had changed over the previous year in that she would cry, scream, and beg not to be left with her father. At the time, the mother was unaware of the sexual abuse and thought that the behavior was related to a change at school. However, viewed in context, this evidence supports the child's revelations of indecent liberties committed by her father. The jury also heard the appellant deny that he made these sexual requests of the child or that he inappropriately touched his daughter or had her touch him. The appellant further suggested that he did not have the opportunity to commit the offenses because he was alone with her for no more than two minutes at a time. However, his mother testified that she occasionally left the children with him while she ran errands. On cross-examination, the appellant admitted that he had told the police that he was "never" alone with his daughter, but he testified that he had meant "almost never." The jury, in rendering the verdicts, rejected the appellant's testimony and his various related self-serving explanations in favor of the credible evidence of guilt. Sanford v. Commonwealth, 54 Va. App. 357, 364, 678 S.E.2d 842, 846 (2009). The rejection of those hypotheses of innocence was not plainly wrong. Id.; see Wood v. Commonwealth, 57 Va. App. 286, 306, 701 S.E.2d 810, 819 (2010) (whether a "hypothesis of innocence is reasonable is itself a question of fact and, therefore, is binding on appeal unless plainly wrong" (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004))).

Finally, we address the appellant's suggestion that the mother and her friend coached the child to fabricate the allegations and the jury should not have believed their testimony. The jury had the opportunity to consider, and reject, the appellant's evidence that the child's mother and

Aubuchon had possible motive to lie and bring false allegations. The child's repeated statements that she feared that recounting the intimate actions involving her father would cause her mother to be angry with her contradicted the appellant's suggestion that her mother encouraged her to fabricate the complaints. The victim's mother testified that she followed the investigator's instruction not to discuss any of the allegations with her daughter. Aubuchon testified regarding the circumstances that led to the child's unprompted disclosure of the offense committed by her father. The jury had the opportunity to watch and listen to the victim, her mother, and Aubuchon as they testified, including Aubuchon's acknowledgment of her criminal history. Their testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief.

The jury found the child victim credible and accepted her account of the crimes. At the same time, the jury rejected the appellant's hypotheses of innocence, including his claim that the child's mother and Aubuchon lied due to the mother's acrimonious relationship with him. Any inconsistencies in the testimony were resolved by the jury when it rendered the verdicts.[6] For these reasons, the evidence was sufficient to support the convictions.

## III. CONCLUSION

The witness testimony supported the convictions and was not inherently incredible. The jury's acceptance of that testimony was reasonable and was not plainly wrong. Therefore, we affirm the appellant's convictions for taking indecent liberties with a child.

Affirmed.

---

[6] We recognize that if "the evidence of guilt or innocence remains anywhere near equipoise—that is, the facts are 'equally susceptible to two or more constructions'—then reasonable doubt exists as a matter of law." Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004) (quoting Feigley v. Commonwealth, 16 Va. App. 717, 724, 432 S.E.2d 520, 525 (1993)). However, where, as the jury did in this case, "the factfinder has rejected the hypothes[e]s" of innocence "as *unreasonable*, that determination cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion." Id.