COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

RAYMEKA MONIQUE WHITE

                                                    OPINION BY
v.        Record No. 1991-16-2            JUDGE MARLA GRAFF DECKER
                                                    DECEMBER 5, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge Designate

Lauren Whitley, Deputy Public Defender, for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Raymeka Monique White appeals her convictions for financial exploitation of a mentally

incapacitated person and credit card fraud, in violation of Code §§ 18.2-178.1 and -195.  The

appellant argues that the Commonwealth failed to prove that the victim was mentally

incapacitated within the definition of the financial exploitation statute.  She also argues that the

Commonwealth failed to prove that she possessed the credit card without the consent of the

cardholder.  For the reasons that follow, we affirm the convictions.

I.  BACKGROUND[1]

In 2003, the victim, A.C.,[2] contracted West Nile virus and encephalitis.  As a result, she

suffered a serious brain injury that significantly compromised her mental and physical

---

[1] In reviewing the sufficiency of the evidence supporting a conviction, the appellate court considers the evidence in the light most favorable to the Commonwealth granting to it all reasonable inferences that flow from the evidence.  Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006).

[2] Due to the nature of this case, the victim is not identified by name.

capabilities. M.B., the victim's sister-in-law, had her power of attorney. Starting in 2004, M.B. arranged around-the-clock in-home health care for the victim. In 2012, M.B. hired the company A Heart for You to provide A.C's nursing care. In 2014, the company placed the appellant in the victim's home as a health care provider.

In 2014, the time of the offenses, A.C. had various mental and physical limitations. She was forgetful and often confused. The victim could not process basic information such as the date, time, or season. She was unable to take care of herself without assistance or to manage her financial affairs. She needed assistance with personal hygiene, dressing, cooking, and cleaning. Although she was able to hold a conversation, she would usually forget that it had occurred. In addition, A.C. had difficulty conversing; her speech was garbled and sometimes she could not understand simple phrases.

At the beginning of the appellant's placement with the victim, M.B. met with her. M.B. explained the duties of the job to the appellant, including the extent of A.C's physical and mental needs. The appellant was expected as "a part of the job" to use the victim's debit card "when [she] took [the victim] out." M.B. relied on the appellant to take A.C. shopping and help her make purchases with the debit card. A.C. often forgot the personal identification number (PIN) and was not dexterous enough to type it on the keypad. Consequently, M.B. provided the appellant with A.C.'s PIN and expected the appellant to enter the PIN if the store required it. In addition, A.C. was prone to dropping the card or "forget[ting] to put it back in her purse," so the appellant was responsible for "making sure it went back in her purse." All receipts for purchases were to be placed in an envelope that M.B. monitored on a regular basis. M.B. told the appellant that she could use the debit card only for A.C.'s expenses. M.B. also told the appellant that she was not to use the card for herself or to withdraw cash for her own benefit.

In late May 2014, M.B. noticed that two cash withdrawals in the amount of $300 each had been made at automated teller machines (ATMs) that month using the victim's debit card. M.B. did not receive receipts for the cash withdrawals. Footage from a surveillance camera at one of the ATMs showed the appellant making the withdrawal on May 25, 2014.

After law enforcement contacted the appellant's supervisor, she telephoned the appellant and told her that her schedule was going to be changed. The supervisor did not confront the appellant about the allegations related to the ATM withdrawals. Without prompting, the appellant suggested that a person named "Peggy had dressed up like her" and "was trying to get her in trouble." Peggy Robinson, an employee of A Heart for You who also provided care for the victim, did not physically resemble the appellant. Of A.C.'s caregivers in May 2014, only the appellant and Robinson had access to A.C.'s debit card.

The Commonwealth charged the appellant with financial exploitation of a mentally incapacitated person, in violation of Code § 18.2-178.1, and credit card fraud, in violation of Code § 18.2-195. The appellant argued in her motion to strike at trial that the Commonwealth had not proved that the victim was mentally incapacitated. She also contended that she had permission to possess the debit card and that A.C. may have told her to withdraw the money.

The trial court found the appellant guilty of both charges. In doing so, the court concluded that it was "abundantly clear that [the victim] is mentally incapacitated" and that there was "no question" that she "suffers from mental incapacity within the meaning of the statute." The appellant was sentenced to three years in prison for the offenses, with all time suspended.

II. ANALYSIS

The appellant argues that the evidence did not support her convictions. She specifically contends that the Commonwealth failed to prove that A.C. was mentally incapacitated within the meaning of the financial exploitation statute. The appellant also argues that the Commonwealth

did not prove that she possessed the bank card without A.C.'s consent in violation of Code § 18.2-195.

On appeal, this Court reviews a challenge to the sufficiency of the evidence to support a conviction under well-established legal principles. The Court considers "the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Molina v. Commonwealth, 272 Va. 666, 675, 636 S.E.2d 470, 475 (2006) (quoting Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth . . . .'" Kovalaske v. Commonwealth, 56 Va. App. 224, 226, 692 S.E.2d 641, 643 (2010) (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009)). The appellant was tried by the circuit court, sitting without a jury. "Consequently, that court was the fact finder, and its judgment is afforded the same weight as a jury verdict." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015).

When considering the sufficiency of the evidence presented below, "[w]e 'will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it.'" Molina, 272 Va. at 671, 636 S.E.2d at 473 (quoting Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 641 (1999)). In conducting a sufficiency analysis, the appellate court does not "substitute its own judgment for that of the trier of fact." Parham, 64 Va. App. at 565, 770 S.E.2d at 207 (quoting Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013)). "'Rather, the relevant question is,' upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Dietz v. Commonwealth, 294 Va. 123, 132, 804 S.E.2d 309, 314 (2017) (quoting Bowman v. Commonwealth, 290 Va. 492, 496, 777 S.E.2d 851, 854 (2015)).

A.  Financial Exploitation

The appellant maintains that the evidence was insufficient to prove that she financially exploited the victim because it did not support a finding that A.C. was mentally incapacitated within the meaning of Code § 18.2-178.1.  To the extent that the appellant claims that the evidence failed to meet the definition as a matter of law, her challenge to the sufficiency of the evidence hinges upon interpretation of the statute.

Statutory interpretation is a question of law which we review *de novo*.  Graves v. Commonwealth, __ Va. __, __, 805 S.E.2d 226, __ (2017).  If the language of a statute is "plain and unambiguous, we are bound by the plain meaning of that statutory language."[3]  Tisdale v. Commonwealth, 65 Va. App. 478, 484, 778 S.E.2d 554, 557 (2015) (quoting Lee Cty. v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002)).  Further, we "'presume[] that the legislature chose, with care, the words it use[d]' when it enact[ed] a statute."  Rives v. Commonwealth, 284 Va. 1, 3, 726 S.E.2d 248, 250 (2012) (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)).  Although we construe criminal statutes strictly against the Commonwealth, we also "give reasonable effect to every word" used in the statute.  Shreve v. Commonwealth, 44 Va. App. 541, 547, 605 S.E.2d 780, 783 (2004) (quoting Clark v. Commonwealth, 22 Va. App. 673, 683, 472 S.E.2d 663, 667-68 (1996), adopted upon reh'g en banc, 24 Va. App. 253, 481 S.E.2d 495 (1997)).

Under Code § 18.2-178.1(A):

> It is unlawful for any person who knows or should know that another person suffers from mental incapacity to, through the use of that other person's mental incapacity, take, obtain, or convert money or other thing of value belonging to that other person with the intent to permanently deprive him thereof.

---

[3] In contrast, when a "statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."  Masika v. Commonwealth, 63 Va. App. 330, 338, 757 S.E.2d 571, 575 (2014) (quoting Kozmina v. Commonwealth, 281 Va. 347, 349-50, 706 S.E.2d 860, 861 (2011)).

Further, the statute defines mental incapacity. It specifically provides that "mental incapacity" in the context of the statute "means that condition of a person existing at the time of the offense described in subsection A that prevents [her] from understanding the nature or consequences of the transaction or disposition of money or other thing of value involved in such offense."[4] Code § 18.2-178.1(D); cf. White v. Commonwealth, 23 Va. App. 593, 597, 478 S.E.2d 713, 715 (1996) (explaining in the context of a different mentally-incapacitated-victim statute that "proof of general mental incapacity" did not prove that the victim met the specific definition of mental incapacity provided by the statute (quoting Adkins v. Commonwealth, 20 Va. App. 332, 346, 457 S.E.2d 382, 389 (1995))). The legislature defined the challenged term within the statute itself using clear, unambiguous language. Consequently, no additional statutory construction is required. Thus, as applicable here, the statute plainly required that the Commonwealth present evidence that the victim was unable to "understand[] the nature or consequences" specifically of the ATM withdrawals at issue in this case.[5] Code § 18.2-178.1(D).

The Commonwealth's evidence proved that in 2003 A.C. sustained a brain injury from encephalitis. Both her physical and mental capabilities were affected. She required constant

---

[4] To "understand" is "to grasp the meaning of." Understand, Webster's Third New International Dictionary (1991); see also Understand, Black's Law Dictionary (10th ed. 2014). "Nature" is defined as the "essential character or constitution of something." Nature, Webster's Dictionary, supra. "Consequence" is defined as "something that is produced by a cause or follows from a form of necessary connection or from a set of conditions: a natural or necessary result." Id. Consequence; see also Adkins v. Commonwealth, 20 Va. App. 332, 344, 457 S.E.2d 382, 388 (1995) (applying the plain meanings of "understand," "nature," and "consequence" in construing the term "mental incapacity" under a different statute). Finally, "disposition" is "[t]he act of transferring something to another's care or possession." Disposition, Black's Law Dictionary, supra.

[5] We note that the statute provides two ways in which the Commonwealth can prove mental incapacity: the inability to understand "the nature or consequences of the *transaction or disposition* of money." Code § 18.2-178.1(D) (emphasis added). However, in this case, the appellant's withdrawals of A.C.'s money from her bank account were both transactions and dispositions of money.

in-home care since 2004. A.C. could not perform "executive functions[,] such as[] reasoning, medication management, financial management, preparing meals for herself, [and] bathing herself." A.C.'s mental deficits specifically included difficulty making purchases on her own and poor short term memory. M.B. had the victim's power of attorney and managed her bank account. Based on this evidence, the trial court found that there was "no question" that the victim was mentally incapacitated as defined by Code § 18.2-178.1.

Considering the facts and circumstances in the record, the evidence was sufficient to prove beyond a reasonable doubt that A.C.'s condition at the time of the offense precluded her from understanding the nature *and* consequences of the appellant's withdrawals of cash at ATMs from her account.[6] The trial court's factual finding that the victim suffered from a mental incapacity within the meaning of Code § 18.2-178.1 was not plainly wrong and was more than adequately supported by the record. See generally Molina, 272 Va. at 671, 636 S.E.2d at 473. Consequently, the evidence was sufficient to support the appellant's conviction for financial exploitation of a mentally incapacitated person.

## B. Credit Card Fraud

The appellant contends that the evidence was insufficient to sustain her conviction of credit card fraud in violation of Code § 18.2-195 "because the Commonwealth did not establish [the appellant] used the ATM bank card in question without the cardholder's consent." She suggests that the Commonwealth failed to prove that the debit card was wrongfully in her

---

[6] We recognize that the plain statutory language requires only that the victim could not understand the "nature *or* consequences" of the transaction or disposition of money. Code § 18.2-178.1(D). Here the evidence was sufficient to establish both.

possession based on her employment duty to use the victim's card and the possibility that A.C., whose memory was poor, gave her consent.[7]

The appellant was convicted of credit card fraud under Code § 18.2-195(1)(a). That code section provides, in pertinent part, that "[a] person is guilty of credit card fraud when, with intent to defraud any person, [she] . . . [u]ses for the purpose of obtaining money . . . a credit card or credit card number obtained or retained in violation of § 18.2-192." Code § 18.2-195(1)(a). Code § 18.2-192 provides, in pertinent part, that "[a] person is guilty of credit card or credit card number theft when . . . [she] takes, obtains or withholds a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent." The focus of Code § 18.2-195(1) is an individual's "misuse of a credit card wrongfully in his or her possession." Saponaro v. Commonwealth, 51 Va. App. 149, 152, 655 S.E.2d 49, 51 (2008); Kovalaske, 56 Va. App. at 232, 692 S.E.2d at 646.

The appellant contends that she possessed the victim's debit card in the scope of her employment. She relies on Saponaro, 51 Va. App. 149, 655 S.E.2d 49, to support her argument. In that case, the defendant's employer had provided him with a business credit card to make purchases on the company's behalf. Id. at 150, 655 S.E.2d at 49. Saponaro charged multiple purchases on the credit card for personal use despite knowing that the card was to be used only for business purposes. Id. The Court reversed the credit card fraud conviction because Saponaro

---

[7] We do not consider the issue of whether the victim's mental incapacity rendered her unable to legally consent to the appellant's possession of the card because neither party raises the issue on appeal. See, e.g., Nicholson v. Commonwealth, 56 Va. App. 491, 510, 694 S.E.2d 788, 797 (2010) ("A mentally incapacitated individual may not have the 'capacity to make a volitional choice to engage or not engage' in a sexual act due to [his or her] lack of understanding of the nature and consequences of the sexual act." (quoting Adkins, 20 Va. App. at 346, 457 S.E.2d at 389)); Londono v. Commonwealth, 40 Va. App. 377, 404 n.6, 579 S.E.2d 641, 654 n.6 (2003) (noting that an issue was not before this Court on appeal because neither party raised the question).

had his employer's consent "to hold the credit card during the entire period he was making his personal purchases on the card." Id. at 151, 655 S.E.2d at 50.

In contrast, in Kovalaske, 56 Va. App. at 232-33, 692 S.E.2d at 646, the defendant made the unauthorized purchases with the credit card on occasions when he did not have permission to possess the card. In affirming his conviction of credit card fraud, this Court held that, unlike Saponaro, Kovalaske "did not misuse his employer's credit card while it was in his lawful possession; [Kovalaske] misused [the employer's] credit card while it was in his *wrongful possession*." Id.

Here, the question is whether the fact finder was permitted to infer from the Commonwealth's evidence that A.C.'s debit card was wrongfully in the appellant's possession when the appellant used it to make the two ATM withdrawals. We hold that the inference was reasonable based on the evidence. See, e.g., Commonwealth v. Moseley, 293 Va. 455, 465, 799 S.E.2d 683, 688 (2017) (explaining that the Commonwealth, as the prevailing party below, was "entitled to the benefit of all reasonable inferences that flow from the evidence").

M.B. testified that the appellant's duties included taking the victim shopping and helping A.C. use her debit card to pay for her items. M.B. explained that the victim would sometimes drop the card or "forget to put it back in her purse." Consequently, the appellant was responsible for "making sure it went back in [the victim's] purse." It was entirely reasonable for the trial court, as trier of fact, to infer from this evidence that the appellant's job required her to assist A.C. with making purchases using the card but that she was to put the card back into the victim's purse immediately upon the conclusion of each transaction. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that when the appellant took the debit card to the ATMs, her possession of the card was not authorized as part of her employment.

- 9 -

The appellant also argues that the Commonwealth failed to prove that A.C. did not

consent to the appellant's possession of the card when she made the specific cash withdrawals.[8]

"The reasonable-hypothesis principle 'merely echoes "the standard applicable to every criminal

case,"'" namely that "the Commonwealth has the burden of proof beyond a reasonable doubt."

Moseley, 293 Va. at 464, 799 S.E.2d at 687 (first quoting Vasquez v. Commonwealth, 291 Va.

232, 250, 781 S.E.2d 920, 930 (2016); and then quoting Commonwealth v. Hudson, 265 Va. 505,

513, 578 S.E.2d 781, 785 (2003)).  "[T]he Commonwealth need only exclude reasonable

hypotheses of innocence that flow from the evidence, not those that spring from the imagination

of the defendant."  Ragland v. Commonwealth, 67 Va. App. 519, 531, 797 S.E.2d 437, 443

(2017) (quoting Case v. Commonewalth, 63 Va. App. 14, 23, 753 S.E.2d 860, 864 (2014)).

"When examining an alternate hypothesis of innocence, the question is not whether 'some

evidence' supports the hypothesis, but whether a rational factfinder could have found that the

incriminating evidence renders the hypothesis of innocence unreasonable."  Vasquez, 291 Va. at

250, 781 S.E.2d at 930 (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785).

The trial court, as trier of fact, was entitled to reject the appellant's "hypothesis of

innocence" below.  When the appellant's supervisor informed her of a schedule change, the

appellant stated without prompting that A.C.'s other care provider, "Peggy[,] had dressed up like

her" and "was trying to get her in trouble."  Based on the substantial evidence that the appellant

---

[8] We note that the appellant's exact language in her assignment of error is that the Commonwealth did not prove that she "used" the card without A.C.'s consent.  However, in this case, the only required showing regarding *consent* by the applicable portions of the statutes is that the appellant *took, obtained, or withheld* the card from the victim or the victim's possession, custody or control without A.C.'s consent.  See Code §§ 18.2-192(1)(a), -195(1)(a).  Therefore, to the extent that the appellant raises the issue of the victim's consent to the appellant's *use* of the card to withdraw money from the ATMs, it quite simply is not an element of the offense, and therefore we do not address it.  See Saponaro, 51 Va. App. at 152-53, 655 S.E.2d at 51 (holding that whether the cardholder *consented* to a particular use of the card is not an element of Code § 18.2-195(1)(a) and (b)).

- 10 -

made the cash withdrawals at issue, not Peggy Robinson, the only other nursing assistant with permission to use the debit card, the trial court "could have concluded that [the appellant] was lying to conceal [her] guilt." See Rawls v. Commonwealth, 272 Va. 334, 350, 634 S.E.2d 697, 705 (2006) (noting that the jury was entitled to infer the defendant's guilty knowledge based on his blatant mistruth to police). The finding of fact that the victim did not consent to the appellant taking her debit card to use at the ATMs was not plainly wrong. In addition, there was no evidence in the record supporting the appellant's hypothesis of innocence that A.C. consented to her possession and "use" of the card at the ATMs. For these reasons, it was reasonable for the trial court to conclude that the victim did not consent to the appellant's possession of her debit card when the appellant withdrew funds from A.C.'s bank account.

### III. CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the conclusion that the victim did not understand the nature and consequences of the appellant's cash withdrawals from her bank account. Consequently, the evidence supported the finding of mental incapacitation within the meaning of Code § 18.2-178.1. Further, the record supports the finding that the appellant did not rightfully possess the card when she took it to the ATMs and withdrew cash. Nor is there evidence that the victim consented to the appellant's possession of the card for the ATM withdrawals. For these reasons, we affirm the convictions for financial exploitation and credit card fraud.

Affirmed.