Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

JAIME SALVADOR MOLINA

v.  Record No. 060267        OPINION BY JUSTICE DONALD W. LEMONS
                                      November 3, 2006
COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider two issues: (1) whether the

trial court erred in granting an instruction including use of

the victim's mental incapacity in a rape case; and (2) whether

there was sufficient evidence to convict the defendant of

forcible sodomy.

                I.  FACTS AND PROCEEDINGS BELOW

                    A.  Prior Proceedings

     On October 24, 2003, a jury in the Circuit Court of

Fairfax County found Jaime Salvador Molina ("Molina") guilty

of rape and forcible sodomy of Stephanie A. Moroffko

("Moroffko").  Molina was sentenced to ten years imprisonment

on each conviction.  The Court of Appeals affirmed the

convictions.  Molina v. Commonwealth, 47 Va. App. 338, 624

S.E.2d 83 (2006).  We granted Molina's petition for appeal on

four assignments of error:  (1) The Circuit Court erred in

granting Instruction 14.  (2) The Court of Appeals erred in

holding that there was evidence to support an instruction

(Instruction 14) that the rape was committed through the use

of mental incapacity of the complaining witness.  (3) The Court of Appeals erred in holding that granting Instruction 14 was harmless error.  (4) The Court of Appeals erred in holding that the evidence was sufficient to sustain the conviction of forcible sodomy.

## B.  Facts

During the morning on September 28, 2002, Moroffko left her house and walked to a nearby convenience store.  After buying some milk and wine and leaving the store, she stopped and sat on a brick wall near the store and began drinking the wine.  Molina approached Moroffko, sat down next to her and they talked.  Moroffko and Molina then began kissing.  While sitting with Molina on the brick wall, Moroffko's head was either "hit by something hard" on the back of her head or she fell and "hit against something."

Later that morning, a police officer noticed Molina standing behind a bush at the rear of the convenience store about 130 or 140 feet from the place on the wall where Moroffko had been sitting.  The officer also found Jose Membrano lying on the ground.  Within 20 seconds of the arrival of the police, Molina looked in the direction of the officer, then began to walk away.  Molina's face was flushed, his eyes were somewhat "reddish," and the officer smelled alcohol on his person.

The officer looked behind the bush and saw Moroffko unconscious and partially naked lying near a dumpster behind the convenience store. The officer attempted to awaken Moroffko and, thereafter, called the rescue squad when she was non-responsive. The emergency medical technician who arrived at the scene noticed some puffiness in Moroffko's face and foam around her mouth, which the technician stated is indicative of a seizure.

The police arrested Molina for being drunk in public. Upon interrogation, Molina told the police that after engaging in consensual vaginal sex with Moroffko some distance from the brick wall, Molina left Moroffko who stayed behind to sleep. According to Molina, he then spoke to some friends in the parking lot, bought some lunch, and came back to the area behind the store. According to Molina, when he returned, Jose Membrano was on top of Moroffko. Moroffko was screaming and had "started to foam at the mouth." Police arrived shortly thereafter.

Upon arrival at the hospital, Moroffko was still non-responsive. She awoke in the hospital where she spent three days with facial lacerations, broken bones in her face and a cut on her head. Moroffko testified that she does not remember anything from the time she sustained a blow to the head until waking up in the hospital. She stated that she was

3

unconscious during that period.  When Moroffko was examined, spermatozoa were found on her "thighs, external genitalia, vaginal cervical, perianal buttocks and anal/rectum smears." The Sexual Assault Nurse who examined Moroffko at the hospital found only minor abrasions in the genital-rectal area, not visible to the naked eye.  There was no blood found on the anal/rectal swabs.  Blood was present "on the vaginal, cervical and [lips/lip] area swabs, on the dental floss and in the oral rinse."  After DNA testing, Membrano was eliminated as a possible contributor of the sperm found, but Molina was not.  The probability that a randomly chosen unrelated individual would have the same DNA pattern displayed in the sample as Molina was "1 in greater than 6.0 billion."

Moroffko has a history of bipolar disorder, with both manic and depressive episodes, drug and alcohol abuse, depression, and seizures accompanied by blackouts involving memory loss.  She was prescribed lithium for her bipolar condition.  These "blackouts" or losses of memory occur when Moroffko abuses medication, alcohol, or other drugs.

When Moroffko was examined at the hospital, benzodiazepines and cocaine were found in her blood.  She also had a blood alcohol level almost three times the legal limit for the operation of a motor vehicle.  Moroffko's lithium level, however, was lower than that of a person taking the

4

proper dosage for bipolar disorder. Moroffko's psychiatrist testified that failure to take the lithium as directed could result in either depression or hypomania, a state characterized by increased energy and impulsive behavior.

Although Moroffko admitted she kissed Molina, she maintains that she did not consent to sexual intercourse with anyone. Additionally, Moroffko does not recall moving from the wall where she was sitting with Molina to the area where she was found. In contrast, Molina stated that at Moroffko's request, they went behind the store and had consensual vaginal intercourse. Molina denied having anal intercourse with Moroffko. He told the police he "had no idea that [Moroffko] was injured or how she was injured."

## II. ANALYSIS

### A. Standard of Review

Our "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982). In determining the sufficiency of the evidence, we review the evidence and "all reasonable inferences flowing therefrom" in the "light most favorable" to the Commonwealth, the prevailing party in the trial court. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786

(2003). Additionally, we must "regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (citations omitted). We "will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it." Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 641 (1999).

### B.  Instruction 14

Virginia Code § 18.2-61(A), in effect at the time of this offense, provided:

> If any person has sexual intercourse with a complaining witness who is not his or her spouse or causes a complaining witness, whether or not his or her spouse, to engage in sexual intercourse with any other person and such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person, or (ii) through the use of the complaining witness's mental incapacity or physical helplessness, or (iii) with a child under age thirteen as the victim, he or she shall be guilty of rape.

The statute defined four distinct circumstances of sexual intercourse:  (i) against a victim's will by force, threat or intimidation, (ii) through the use of the victim's mental incapacity, (iii) through the use of the victim's physical helplessness, or (iv) with a victim under age thirteen.  The only issue before us involves whether mental incapacity of the

6

victim was properly included in the jury instruction as a method of commission of rape under the facts of this case.

Jury Instruction 14 was given to the jury. It stated:

> The Court instructs the jury that the defendant is charged with the crime of rape. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
> (1) That the defendant had sexual intercourse with Stephanie Moroffko who was not then the defendant's spouse; and
> (2) That it was against her will and without her consent; and
> (3) That it was by force, threat or intimidation; or by the use of her mental incapacity or physical helplessness.
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty but you shall not fix punishment until your verdict has been returned and further evidence has been heard by you.
> If you find that the Commonwealth has failed to prove beyond a reasonable doubt either of the above offenses, then you shall find the defendant not guilty.

Among other arguments, Molina maintains that the instruction is erroneous because it is "confusing" and because its disjunctive nature permits a less than unanimous finding by the jury concerning the method employed to commit the crime. The Court of Appeals assumed without deciding that the instruction was erroneous and held that, if erroneous, it was harmless error. However, our review of the record reveals

7

that these two arguments were waived because Molina did not make those arguments to the trial court.  In oral argument before this Court, counsel for Molina conceded that no argument was made at trial based upon "confusion" or potential non-unanimous verdict prior to submission of the instruction to the jury.  Accordingly, these objections will not be considered for the first time on appeal.  Rule 5:25; see Muhammad v. Commonwealth, 269 Va. 451, 523, 619 S.E.2d 16, 57 (2005); Wackwitz v. Roy, 244 Va. 60, 63, 418 S.E.2d 861, 863 (1992).

Molina did argue at trial that there was insufficient evidence of mental incapacity of the victim to include that condition in Instruction 14.  "Mental incapacity," a statutory term that applies to rape and other sex crimes, in Chapter 4, Article 7 of Title 18.2 of the Code of Virginia, is defined as "that condition of the complaining witness existing at the time of an offense . . . which prevents the complaining witness from understanding the nature or consequences of the sexual act involved in such offense and about which the accused knew or should have known."  Code § 18.2-67.10(3).  Molina argues that the statutory term "mental incapacity" is limited to a permanent mental condition such as retardation rather than a transitory condition such as voluntary intoxication.  Accordingly, Molina maintains that there was no

8

evidence of a permanent mental condition suffered by Moroffko such that she did not understand "the nature and consequences of the sexual act involved."

We disagree with Molina's narrow construction of the statute. Nothing in the statutory definition itself limits the definition of "mental incapacity" to a permanent condition. Instead, the meaning is found in the incapacity described: "which prevents the complaining witness from understanding the nature or consequences of the sexual act." Further, the definition refers to a condition existing "at the time of an offense" and does not limit its scope to non-transitory conditions. We hold that the term "mental incapacity" may extend to a transitory circumstance such as intoxication if the nature and degree of the intoxication has gone beyond the stage of merely reduced inhibition and has reached a point where the victim does not understand "the nature or consequences of the sexual act." Code § 18.2-67.10(3).

Other states that have considered the issue, understandably, focus upon the inability to give consent to the act itself. The cause of the victim's lack of ability to give consent is not dispositive. See State v. Farnum, 554 N.W.2d 716, 721 (Iowa Ct. App. 1996) (recognizing that although incapacity "is generally applied in cases of retarded

9

or low-functioning victims," it may be applied to a seriously intoxicated victim); State v. Al-Hamdani, 36 P.3d 1103, 1107 (Wash. Ct. App. 2001) ("It is important to distinguish between a person's general ability to understand the nature and consequences of sexual intercourse and that person's ability to understand the nature and consequences at a given time and in a given situation." (emphasis added)), review denied, 60 P.3d 1211 (Wash. 2003); see also State v. McDowell, 427 So. 2d 1346, 1350 (La. Ct. App. 1983) (in rape cases, the fundamental question is whether or not the mental condition of the victim is so impaired that legal consent cannot be exercised or given.)

Considering the definition of "mental incapacity," we must review the record to determine whether there was prima facie evidence presented to support inclusion of "mental incapacity" as a method of committing the crime of rape. The evidence viewed in the light most favorable to the Commonwealth includes the fact that, at the time of the sexual acts, Moroffko was under the influence of benzodiazepines and cocaine, an opiate. Her lithium blood levels were below therapeutic dosage. Her blood alcohol levels were almost three times the legal limit for the lawful operation of an automobile in Virginia. Even Molina's expert witness described Moroffko's combination of medication, drugs, and

alcohol as "deadly." This evidence was sufficient to enable a jury to conclude that Moroffko was mentally incapable of understanding "the nature or consequences of the sexual act involved" at the time of the assault. Additionally, Moroffko had been struck on the head and evidence was presented in support of the conclusion that she suffered a seizure. We hold that there was sufficient evidence to instruct the jury that they could find Molina guilty of rape based upon Moroffko's mental incapacity of which he "knew or should have known" at the time of the sexual acts. Code § 18.2-67.10(3).

### C. Forcible Sodomy

Molina argues that the evidence was insufficient to show force in the commission of sodomy. We disagree. Code § 18.2-67.1(A) provides:

> An accused shall be guilty of forcible sodomy if he or she engages in . . . anal intercourse with a complaining witness . . . and . . . [t]he act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person. . . .

Molina denies that he had anal intercourse with Moroffko. However, spermatozoa were found approximately one to two inches inside Moroffko's anal cavity. DNA analysis of the spermatozoa revealed that the probability that a randomly chosen unrelated individual would have the same DNA pattern displayed in the sample as Molina was "1 in greater than 6.0

11

billion."  Therefore, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence that a jury could reasonably conclude that Molina and Moroffko engaged in anal intercourse.

Additionally, there is sufficient evidence that a jury could reasonably conclude that Molina used force to sodomize Moroffko.  First, there is evidence that as Molina sat with Moroffko on the brick wall Moroffko was either "hit by something hard" on the back of her head or she fell and "hit against something."  Moroffko, however, does not know who or what hit her and she did not see who or what hit her.  Second, Moroffko lost consciousness after being hit or hitting her head and suffered facial lacerations, broken bones in her face and a cut on her head.  Third, the evidence reasonably suggests that Moroffko was dragged from the brick wall to the area near the bush and dumpster behind the convenience store. After being hit or hitting her head, Moroffko does not recall getting up from the brick wall or moving to the bush behind the convenience store where she was found unconscious. Furthermore, Molina concedes that he had sex with Moroffko some distance from the brick wall.  Finally, although Moroffko admitted to kissing Molina, she maintains that she did not consent to any form of sexual intercourse with anyone on that day.

12

When a defendant challenges the sufficiency of
the evidence on appeal, we must view the
evidence and all reasonable inferences fairly
deducible therefrom in the light most favorable
to the Commonwealth.  Higginbotham v.
Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534,
537 (1975).  We will not disturb the fact
finder's verdict unless it is plainly wrong or
without evidence to support it.  Stockton v.
Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371,
385, cert. denied, 469 U.S. 873 (1984).

Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831
(2002).

### III.  CONCLUSION

The judgment of the Court of Appeals will be affirmed.

Affirmed.