COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Friedman and Callins
Argued at Richmond, Virginia


COREY D. GOODSON, SR., SOMETIMES KNOWN AS
  COREY DEON GOODSON, SR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1347-23-2                      JUDGE FRANK K. FRIEDMAN
                                                        SEPTEMBER 10, 2024

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                              Steven B. Novey,[1] Judge

            Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
            Defense Commission, on briefs), for appellant.

            Linda R. Scott, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        Corey D. Goodson, Sr., appeals his voluntary manslaughter conviction and sentence.[2] He

contends that the trial court erred by refusing two jury instructions related to his self-defense

claim. He also argues that the trial court erred by refusing to vacate the sentencing order and

hold a new sentencing hearing on the grounds that: (1) when a judge who had not presided over

the trial handled sentencing, the court did not review the entire record before the sentencing

hearing; and (2) a witness at that hearing misrepresented her relationship to the victim. We

affirm.

---

        * This opinion is not designated for publication. *See* Code § 17.1-413(A).

        [1] Judge Lynn S. Brice presided over Goodson's trial. Judge Novey presided over
Goodson's sentencing and motion to vacate hearings.

        [2] Goodson also pleaded no contest and was convicted of possession of a firearm by a
convicted violent felon. He does not challenge that conviction on appeal.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In January 2022, Goodson drove his girlfriend, Maritta Ellis, to a police station in Chesterfield to pick up Ellis's daughter from Ellis's former husband, Stuart Jeffries.  Police security cameras recorded Goodson parking his car in front of Jeffries's truck.  Jeffries then maneuvered around Goodson's vehicle to park in a different spot.  Officer Michael Dean was in a parked police vehicle nearby.

Ellis exited Goodson's car and walked toward Jeffries's truck.  She testified for Goodson that Jeffries yelled at her because Goodson had parked too close.  After about 30 seconds, Ellis walked back toward Goodson's car with her daughter.

Once Ellis returned to Goodson's car, Goodson exited and walked toward Jeffries.  Jeffries approached Goodson as well and swung his fist at Goodson's face.  A fist fight ensued, which Ellis tried to deescalate.  After 15 to 20 seconds, Goodson backed up, pulled a firearm from his pocket, and shot Jeffries in the throat.  Jeffries died at the scene from the single gunshot wound.

The police interviewed Goodson at the police station that evening.  At trial, the Commonwealth played several short clips from that interview.  Goodson explained to the interrogating officer that he had approached Jeffries to tell him to stop "mouthing off" to Ellis, and Jeffries responded by punching Goodson.  Goodson told the police that, while Jeffries

- 2 -

continued to fight him, Goodson pulled out his gun and told Jeffries to stop.  Jeffries "kept on approaching," however, and Goodson shot him.  Goodson admitted, "I know I did wrong" but maintained that he tried to deescalate the conflict.

Goodson testified that he had heard Jeffries threaten Ellis and confronted Jeffries because he was afraid for Ellis's safety.  Once the confrontation began, he tried to persuade Jeffries to leave and feared that Jeffries would kill him.  He claimed that he carried the gun for his protection.  He admitted that he had been convicted of six felonies.

The trial court provided the jury with model instructions for justifiable and excusable self-defense but rejected two additional instructions that Goodson argued were necessary to clarify the model instructions.  The jury convicted Goodson of voluntary manslaughter.[3]

Different judges presided over the sentencing hearing and trial.  The sentencing judge affirmed at the beginning of the sentencing hearing that he reviewed the presentence report, the victim impact statement, and the trial transcript.  The judge had not reviewed the surveillance video but watched the footage twice during the hearing and confirmed that he would consider the video in sentencing Goodson.  Andrea Rivers testified at sentencing that Jeffries was her "little brother" and described his death's impact on his family.

The court sentenced Goodson to ten years' imprisonment for voluntary manslaughter with no time suspended.[4]  In explaining the sentence, the court discussed Goodson's criminal history, his possession of a firearm despite having felony convictions, his decision to escalate a fist fight into a gun fight, and the harm to Jeffries's daughter.  The court did not reference

---

[3] The jury acquitted Goodson of using a firearm in the commission of murder.  Goodson later pleaded no contest to possession of a firearm by a convicted violent felon.

[4] The court also sentenced Goodson to five years' imprisonment with no time suspended for possession of a firearm by a convicted violent felon.

- 3 -

Rivers's testimony. The court found from its review of the surveillance video that Goodson initiated the confrontation with Jeffries.

Goodson later moved to vacate the sentence and requested a new sentencing hearing. He asserted that a new hearing was required because the sentencing judge did not review each exhibit before the sentencing hearing, which Goodson argued was required by Code § 19.2-154. Goodson also asserted that an independent investigation revealed that Rivers was Jeffries's "god-sister," not his biological sister, and that the court should not have considered her testimony at sentencing.

At a subsequent hearing, the court asked Goodson which exhibits he believed would mitigate his sentence. Goodson referred the court to the surveillance video and the interrogation videos, which he argued showed his concern for Jeffries. The court asked Goodson if he objected to the court reviewing those videos before ruling on Goodson's motion. Goodson responded that the court should review them alongside the transcript to provide the necessary context. The court agreed that it would do so to determine whether to change its opinion about sentencing. Goodson responded, "I appreciate that, Your Honor."

The court left the bench and returned an hour and a half later. The court stated that it had reviewed every exhibit, including each video. The court explained, however, that the exhibits did "not change [the court's] mind one bit that the sentence was right and appropriate, given the defendant's actions." As for Rivers, the court explained that it did not remember whether she testified that she was Goodson's sister because the court "was more concerned about the impact" on Jeffries's daughter. The court clarified that Rivers's testimony that she was Jeffries's sister did not impact the sentence the court imposed. Accordingly, the court denied the motion.

- 4 -

ANALYSIS

I. Jury Instructions

"A trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)). We review a challenge to jury instructions solely to determine "that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)). It is not reversible error to refuse even an instruction that correctly states the law if the given instructions adequately cover all issues. *Id.* (citing *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003)).

A defendant must "produce some evidence to support a claim of self-defense" because it is an affirmative defense. *Id.* at 167-68 (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). If he does so, the Commonwealth bears the burden of persuading the fact finder beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* at 168.

Virginia recognizes two types of self-defense: justifiable and excusable. *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016). Justifiable self-defense requires the defendant to prove that he had no fault "in provoking or bringing on the difficulty." *Id.* (citing *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)). Excusable self-defense applies when the defendant was at some fault but "retreated as far as he safely could under the circumstances in a good faith attempt to abandon the fight" and "made known his desire for peace by word or act." *Id.* at 489.

The trial court gave Instruction 15 for justifiable self-defense, which is nearly identical to Virginia Model Criminal Instruction 33.800:

> If you believe that the defendant was without fault in provoking or bringing on the fight or difficulty, and if you further believe that:
>
> 1. That the defendant reasonably feared, under the circumstances as they appeared to him, that he was in

- 5 -

imminent danger of being killed or that he was in imminent danger of great bodily harm; and

2. That the defendant used no more force, under the circumstances as they appeared to him than was reasonably necessary to protect himself from the perceived harm,

Then the killing was in self-defense, and you shall find the defendant not guilty.

The trial court also gave Instruction 16 for excusable self-defense, which largely tracks Virginia

Model Criminal Instruction 33.810:

If you believe that the defendant was to some degree at fault in provoking or bringing on the fight or difficulty, and if you further believe that when attacked:

1. That the defendant retreated as far as he safely could under the circumstances in a good faith attempt to abandon the fight; and

2. made known his desire for peace by word or act; and

3. that the defendant reasonably feared, under the circumstances as they appeared to him, that he was in danger of being killed or that he was in imminent danger of great bodily harm, and

4. that the defendant used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm,

then the killing was in self-defense, and you shall find the defendant not guilty.

The trial court instructed the jury on the burden of persuasion in Instruction 10:

You have been instructed on more than one grade of homicide and if you have a reasonable doubt as to the grade of the offense, then you must resolve that doubt in favor of the Defendant, and find him guilty of the lesser offense.

For example, if you have a reasonable doubt as to whether he is guilty of second degree murder or voluntary manslaughter, you shall find him guilty of voluntary manslaughter. *If you have a reasonable doubt as to whether he is guilty at all, you shall find him not guilty.*

- 6 -

(Emphasis added). The trial court also instructed the jury in Instruction 2 that "[t]he defendant is presumed to be innocent," the "presumption of innocence remains with the defendant throughout the trial," the Commonwealth must "prove[] each and every element of the offense beyond a reasonable doubt," and "[t]here is no burden on the defendant to produce any evidence."

Against this backdrop, Goodson proposed the following Instruction A, which the trial court refused:

> The burden resting upon an accused relying upon the right of self-defense is to establish such defense, not beyond a reasonable doubt, nor even by the greater weight of the evidence, but only to the extent of raising a reasonable doubt as to whether or not he acted in the lawful exercise of such right.

In *Taylor*, the trial court gave instructions that were virtually identical to Instructions 2, 10, and 16 in this case. *Taylor*, 77 Va. App. at 166-67. Taylor argued that the self-defense instruction improperly shifted the burden of proof to him—and he offered an instruction similar to Goodson's proposed Instruction A.[5] *Id.* at 167. The trial court rejected Taylor's proposed instruction. *Id.* This Court affirmed, holding that the rejected instruction was unnecessary because the given instructions accurately stated the law, adequately covered all the issues in the case, and Taylor did not identify "any misleading aspect of the" self-defense instruction. *Id.* at 168-69.

Goodson attempts to distinguish his argument from Taylor's on the ground that he "is not arguing that the self-defense instructions given impermissibly shifted an undefined burden of proof." Rather, he argues that Instructions 15 and 16 were misleading because they asked whether the jury "believe[d]" certain facts without providing "guidance on what it means to believe." But this slight distinction does not necessitate a different outcome than in *Taylor*. We held that the

---

[5] Taylor's proposed instruction stated: "If you find from a consideration of all of the evidence in the case that the defendant's claim of self-defense creates a reasonable doubt that he committed the offense, then you shall find him not guilty." *Taylor*, 77 Va. App. at 167. Taylor's proposed instruction is substantially clearer than Goodson's Instruction A.

instructions in *Taylor* "fully and fairly covered the relevant principles of law" and were not misleading. *Id.* at 169. As we explained, the instructions made clear that the Commonwealth was required to "prove[] each and every element of the crime *beyond a reasonable doubt*." *Id.* (emphasis added). That is, the instructions not only were clear as to who bore the burden, but also provided the jury with guidance as to how to assess the burden. The same is true of the nearly-identical instructions here.

"Under the interpanel-accord doctrine, the decision of a prior panel of this Court . . . 'cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court.'" *Johnson v. Commonwealth*, 75 Va. App. 475, 481 (2022) (quoting *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020)). The doctrine "applies not merely to the literal holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment." *Id.* at 481-82 (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003)). Accordingly, we follow *Taylor* and affirm the trial court's rejection of Instruction A.

The trial court also rejected Goodson's Instruction B:

> To claim self-defense the defendant must have reasonably feared death or serious bodily harm to himself at the hands of Stuart Jeffries. It is not essential to the right of self-defense that the danger did in fact exist. If it reasonably appeared to the defendant that the danger existed, he had the right to defend against it to the same extent, and under the same rules, as would apply if the danger had been real.

The thrust of Instruction B was also covered by other instructions. Instructions 15 and 16 stated that to claim self-defense, Goodson must have "reasonably feared, *under the circumstances as they appeared to him*, that he was in danger of being killed or that he was in imminent danger of great bodily harm." (Emphasis added). Those instructions, which are based on model instructions, made clear that self-defense turns on the reasonableness of Goodson's fear and not on whether the danger

actually existed.[6]  Therefore, Instruction B was at best duplicative, and the trial court did not abuse its discretion by refusing it.  *See Taylor*, 77 Va. App. at 168-69 (providing "where granted instructions 'fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle'" (quoting *Huguely*, 63 Va. App. at 129)).

## II.  Motion to Vacate

Goodson's final assignment of error challenges the trial court's denial of his motion to vacate the sentencing order.  He raises a series of criticisms regarding the sentencing, but none warrant reversal.  Determining the sentence "lies within the sound discretion of the trial court.  A sentencing decision will not be reversed unless the trial court abused its discretion." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)).  "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016).  "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*  Consequently, "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Id.* at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

---

[6] In contending otherwise, Goodson relies on *Fortune v. Commonwealth*, 133 Va. 669, 682, 691 (1922), in which the Supreme Court held that the trial court erred by refusing an instruction stating that "whether the danger is apparent or not is always to be determined from the standpoint from which the defendant viewed it at the time he acted."  Refusing that instruction was error because "there was no instruction given the jury which embodied this doctrine," and the trial court gave a separate instruction that "made the justification of the killing depend entirely upon the actual necessity." *Id.* at 692.  Unlike in *Fortune*, the instructions the trial court gave in this case already covered the principle that the reasonableness of the defendant's fear must be based on the circumstances as they appeared to him.

We review questions of statutory interpretation de novo. *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020). A sentencing judge, if not the judge who presided over the trial, must "certify that he has familiarized himself with the record of the trial" before sentencing the defendant. Code § 19.2-154. The statute does not specify what remedy is to be applied if the sentencing judge fails to do so. Nonetheless, Code § 8.01-678 makes harmless error review "required in all cases." *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022). Non-constitutional error is harmless if we determine that "there has been a fair trial on the merits and . . . substantial justice has been reached" because "the alleged error [did not] substantially influence[] the" fact finder. *Id.* at 217 (quoting *Haas v. Commonwealth*, 299 Va. 465, 467 (2021)).

Any error by the trial court in failing to review each exhibit before the sentencing hearing was harmless. Prior to sentencing Goodson, the court reviewed the trial transcript, the presentence report, the victim impact statement, and the surveillance video of the shooting twice. And, even if belatedly, the court ultimately reviewed each exhibit that Goodson claimed would mitigate his sentence before explaining that those exhibits did not "change [its] mind one bit that the sentence was right and appropriate." In doing so, the trial court essentially granted Goodson's request insofar as it reviewed the record and reconsidered Goodson's sentence. It simply disagreed that the previously unreviewed portions of the record required it to change Goodson's sentence. Accordingly, we conclude with full confidence that any failure to review every exhibit before sentencing did not substantially influence the court's sentencing decision.

Similarly, any error by the court in denying a new sentencing hearing based on Rivers's testimony was harmless. The trial court never referenced Rivers's testimony in its thorough explanation in support of the sentence it imposed. As the court clarified at the latter hearing, the victim about whom the court "was more concerned" was Jeffries's daughter. Again, we can safely conclude that the revelation that Rivers was Jeffries's god-sister and not his biological sister did not

substantially influence the trial court's sentencing decision given the court's explicit representation that it did not consider Rivers's relationship to Jeffries.

Finally, Goodson's sentence fell within the statutory range. The court sentenced Goodson to ten years' imprisonment for voluntary manslaughter, which carries a maximum sentence of ten years' imprisonment. Code §§ 18.2-10, -35. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Accordingly, the trial court did not abuse its discretion in denying Goodson's motion to vacate his sentence.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*