COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


DONTE TAYVON THOMAS
                                                  MEMORANDUM OPINION* BY
v.        Record No. 1462-24-4              JUDGE ROSEMARIE ANNUNZIATA
                                                  NOVEMBER 12, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

(Brandon R. Sloane; Sloane Stewart, PLLC, on brief), for appellant.
Appellant submitting on brief.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Donte Tayvon Thomas of carjacking, use of a firearm in the

commission of a carjacking, hit and run causing more than $1,000 in damage, felony eluding,

and providing false identification to a law enforcement officer.[1]  The trial court sentenced

Thomas to 43 years and 12 months' incarceration, with 31 years and 6 months suspended.  On

appeal, Thomas argues that the trial court erred when it denied his motion *in limine* to exclude

the firearm as irrelevant.  He contends that the evidence was insufficient to sustain his

convictions.  Finally, Thomas asserts that the trial court erred when it refused to give his

proffered jury instruction.  Finding no error, we affirm the trial court.

---

\* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Separately, he pleaded guilty in a written agreement to being a felon in possession of a
firearm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

In December 2022, Donte Thomas accosted Walter Hernandez at gunpoint and ordered Hernandez to enter the apartment building where he worked. Hernandez described Thomas as a Black man wearing black pants, shoes, and a jacket. Thomas directed Hernandez to get on the floor, pointed the gun at Hernandez's face, and took his cellphone, two gold chains, a work knife, and the keys to his truck. As Thomas left, he ordered Hernandez to go to the basement. Hernandez sought help at a resident's apartment, who called 911. Hernandez described the gun as black with a large magazine, perhaps an Uzi.

After Thomas left, the building surveillance videos showed Hernandez's truck, a black Toyota Tundra with Maryland license plates, speeding away from the apartment building. Alexandria Police Officers Phillip Morse and Anggelo Suarez and Sergeant Bobby Taylor engaged in a high-speed pursuit of the truck through the city. The truck drove between 80 and 85 miles per hour in 35 mile-per-hour zones, drove into on-coming traffic, and struck two vehicles at a traffic light causing property damage.

Officer Morse and Sergeant Taylor saw the truck, unoccupied but running, stopped in the middle of a road. They called for additional officers; when K9 Officer Carlos Rolon arrived, he saw Thomas hiding in the bushes in a grassy area less than ten feet from the abandoned truck. The

officers detained and handcuffed Thomas, advised him of his *Miranda*[2] rights, conducted two pat-downs for weapons, and then placed him in a police cruiser. Thomas identified himself as Javon Wilson with a birthdate of February 17, 1990. Thomas was arrested and a subsequent search yielded a key fob with a Toyota label in Thomas's jacket pocket.

Officers Rolon and Morse found a "pistol" "buried a bit" in foliage, vines, and grass where Thomas was found. They retrieved a "long magazine," "like an extended magazine" beside or under Thomas in the grassy area. Officer Morse photographed the items, then cleared the firing chamber and secured the gun. He turned the firearm and the magazine over to Detective Robert Pond. Thomas saw the firearm and magazine placed on the hood as he sat in the police car.

Officer Suarez conducted a "show up"[3] identification of Thomas with Hernandez in Spanish. Hernandez said "el es" twice, meaning "that's him." Thomas was charged with carjacking, using a firearm in the commission of a carjacking, possession of a firearm by a violent felon, felony hit and run, felony eluding, and false identification to law enforcement. In a post-arrest interview with Officer Andrea O'Leary, Thomas said that "that rusty ass, old gun didn't have any bullets in it. It wasn't on me."

Pre-trial, Thomas moved to suppress the firearm as irrelevant, unduly prejudicial, and likely to mislead the jury.[4] He also argued that the description Hernandez gave did not match the gun found, and no forensic evidence linked him to the gun. Denying Thomas's motion, the trial court found that "this wasn't just any gun. It was a black pistol with an extended magazine . . . found

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] In a show up identification, the victim or witness identifies whether the suspect is the person described.

[4] Thomas also moved to suppress statements he made to Detectives Christine Escobar and Darryl Ferrer. The trial court's denial of the motion is not part of this appeal.

minutes after an alleged robbery within feet of the individual who was followed and arrested for that robbery." It concluded that the relevance of the firearm far outweighed any prejudicial impact.

At trial, Hernandez described what Thomas wore that morning and how Thomas approached him "so quickly" from behind, pointed the weapon at his face, and took the "rest of [his] things." Hernandez identified Thomas on the surveillance video shown at trial and said that he thought he "was going to die," that it was "going to be [his] last day," and he was thinking of his "wife who was pregnant, and that [he] wanted to meet his child." Hernandez identified his truck from the photos, described how it looked on the morning of the robbery when he parked, but said his car was "just not as wrecked as it [was] in those photos." A police officer returned the key fob when the truck was returned.

Detective Pond identified the recovered firearm as a black Taurus and described the extended magazine. After securing it at the scene, he packaged and submitted it to the Department of Forensic Science (DFS) for analysis. Bronwyn McMaster, a senior forensic scientist at DFS, was qualified as an expert in firearms, ammunitions, and forensic firearm examination. She opined that the firearm was in operable condition and produced a certificate of analysis. McMaster used the recovered magazine to test fire the weapon. Despite an unworkable safety feature the firearm was operable.[5]

Christopher Bahret was driving his 2018 Ford F-150 truck to work in Alexandria that morning. He saw an Alexandria police cruiser "travelling at a high rate of speed with siren, lights" which was "followed very quickly by an unmarked vehicle similarly traveling at a high speed with lights on." After Bahret slowed to make a turn, he saw a "vehicle hot on [his] tail, maybe a foot or two off the rear bumper." He described hearing and feeling a "crunching sound" on the driver's

---

[5] The parties stipulated that there was no DNA sample suitable for analysis and no fingerprints were recovered from the firearm.

side of his truck, as if he were "being driven off the road" and "tearing up the side of the vehicle." He saw a Black male, alone, driving the pickup truck with a Maryland license plate—the subject of the police pursuit. The driver did not stop after striking Bahret. Bahret stated that his truck was "severely damaged" on the driver's side, including the front left fender, left tire wall, side mirror, running board, and rear quarter panel. Describing the extent of the damage, Bahret said that the "the skin of the [driver's side] door . . . literally just peeled off the vehicle, exposing the internals of the door." Officer Bing responded to the hit and run and confirmed the extent of the damage to Bahret's truck. The estimated damages exceeded $15,000.

In January 2023, Officer Benjamin Walsh found two black balaclavas in the "back rear passenger side of the police cruiser" "where [Thomas's] feet would go."[6] The balaclavas were "balled up" and stuffed into the crevice, the "cut out in the rear passenger seat" where the "arrestee's feet would go, it's room for their feet." Officer Walsh found "two D.C. identification cards" and a debit card belonging to Thomas inside the balaclavas.[7]

At the close of the Commonwealth's evidence, Thomas moved to strike all the evidence on sufficiency grounds. The trial court denied the motion. In his defense, Thomas played part of the 911 call made by the resident on Hernandez's behalf. He renewed his motion to strike the evidence on the same grounds, focusing on the facts of the carjacking. The trial court denied the motion, finding that Thomas's argument went "to the weight and it would be a jury question."

Thomas proposed a jury instruction for the hit and run charge which stated that the damage to the vehicle was not more than $1,000, which the trial court accepted. He also proposed an instruction that stated that "if facts are susceptible to two different interpretations, one of which is

---

[6] Officers Morse and Walsh shared a police cruiser.

[7] The parties stipulated that Thomas falsely identified himself to law enforcement as Javon Wilson.

- 5 -

consistent with the innocence of the accused, you cannot arbitrarily adopt the interpretation which incriminates him." Thomas argued that, although not a model jury instruction, it was "an accurate statement of the law." The trial court ruled that the "instruction on presumption of innocence and reasonable doubt in combination with the circumstantial evidence instruction cover[ed] those areas," so Thomas's instruction was "not appropriate to give." Thomas offered an alternative instruction for carjacking which the trial court rejected because it was not "an accurate statement" of the prosecution's burden of proof. After closing arguments, the trial court instructed the jury. The jury convicted Thomas on all charges. The trial court sentenced him to 43 years and 12 months' incarceration, with 31 years and 6 months suspended.[8] This appeal followed.

ANALYSIS

I. *The trial court properly found that the firearm was relevant and not unduly prejudicial.*

"When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse of discretion standard." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (citing *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va.

---

[8] The trial court entered a nunc pro tunc order on June 27, 2024, to correct a scrivener's error in the sentencing order.

187, 212 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista*, 303 Va. at 370 (quoting *Swann*, 290 Va. at 197).

"It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)), *aff'd*, 303 Va. 60 (2024). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto." *Warren*, 76 Va. App. at 802 (quoting *McMillan v. Commonwealth*, 277 Va. 11, 22 (2009)). "While evidence may be relevant in that it tends to establish the proposition for which it was offered, in order to be admissible, it must also be material," that is "tend[ing] to prove a matter that is properly at issue in the case." *Commonwealth v. Proffitt*, 292 Va. 626, 634-35 (2016) (quoting *Brugh v. Jones*, 265 Va. 136, 139 (2003)). "Indeed, this materiality requirement is built into Rule 2:401's language, which states that the evidence must be probative of a 'fact in issue.'" *Id.* at 635.

Thomas moved to suppress the firearm on relevance grounds. He argued that "just the fact that a gun was used in this offense doesn't mean that any gun that is located is relevant and should be admissible at trial. That's exactly the type of evidence that could mislead and confuse a jury." Thomas contended that because the gun found did not match the one Hernandez described and Hernandez never identified the gun at trial, the gun held "no relevance at all." He added that because the gun appeared "old" and could have been "in that location for some time exposed to the elements," there was no connection of the gun to the case. Thomas stated that even if the gun was relevant to the crimes charged, its probative force was marginal and greatly outweighed by its prejudicial value. Denying the motion, the trial court found that it "wasn't just any gun. It was a

black pistol with an extended magazine that was found minutes after an alleged robbery within feet of the individual who was followed and arrested for the robbery."

"It shall be unlawful . . . to use . . . any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing . . . carjacking." Code § 18.2-53.1. So the presence of the gun, which Thomas used when he robbed Hernandez and took his truck was an essential element of the crime and was both relevant and material. We find no abuse of discretion in the trial court's discretion in admitting the gun officers recovered from next to Thomas.

II. *The evidence was sufficient to convict Thomas of each charge*.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The question on appeal is not if the Court believes the evidence at trial was sufficient, but if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cappe v. Commonwealth*, 79 Va. App. 387, 398 (2024) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)).

A. *Carjacking and the use of a firearm in the commission of a carjacking*

Carjacking is "the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another . . . by means of . . . putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or

instrumentality whatsoever." Code § 18.2-58.1; *see Hilton v. Commonwealth*, 293 Va. 293, 299 (2017) ("the Commonwealth must prove beyond a reasonable doubt that . . . the perpetrator intentionally seized, or seized control of, the [victim's] vehicle, either temporarily or permanently" and "the perpetrator so deprived the victim of possession or control of the vehicle by means of one or more . . . specifically prohibited acts," such as assault). Evidence that a defendant used violence to take control of a person's keys with intent to deprive that person of his vehicle establishes the elements of carjacking. *Bell v. Commonwealth*, 21 Va. App. 693, 697-99 (1996).

"It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing . . . carjacking." Code § 18.2-53.1. Use of a firearm is a "separate and distinct felony" and carries a "mandatory minimum term of imprisonment of three years for a first conviction," and "shall be made to run consecutively with[] any punishment received for the commission of the primary felony." *Id.*

The evidence established that Thomas pointed a firearm at Hernandez's face when he robbed Hernandez of his personal property, including the key fob. Hernandez feared for his life during the encounter. Surveillance video showed Thomas fleeing from the apartment building toward the parking lot where Hernandez had parked his Toyota Tundra truck. Officers pursued the truck at high speed through Alexandria. Thomas collided with Bahret as officers pursued Thomas at high speed. Officers found the truck abandoned in the middle of a road, still running, less than 15 minutes after the carjacking. Thomas was less than ten feet from the truck hiding in the grass. Officers found a black Taurus handgun and an extended magazine on the ground where Thomas was hiding. The key fob to the truck was in Thomas's coat pocket. Taken together, this evidence supports the jury's finding that Thomas used a firearm when he took Hernandez's key fob, so was guilty of carjacking and using a firearm to do so.

B. *Hit and run, >$1,000 damage*

> The driver of any vehicle involved in an accident in which . . . an attended vehicle . . . is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic . . . and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, [or] to the person struck.

Code § 46.2-894. The statute establishes that if the accident results in damage greater than $1,000, the offense is a Class 5 felony. *Id.* "Controlling authority makes clear that a driver is 'involved in an accident' within the meaning of Code § 46.2-894 when there is 'physical contact between the driver's vehicle and another vehicle, person, or object, *or* the driver of a motor vehicle [is] a proximate cause of an accident.'" *Evans v. Commonwealth*, 82 Va. App. 612, 627 (2024) (alteration in original) (quoting *Robinson v. Commonwealth*, 274 Va. 45, 53 (2007)). The duty to "stop, report, and render aid are 'written in the conjunctive'" and the prosecution "'can establish [a defendant's] guilt by proving [that the defendant] failed to perform'" any one of the duties required. *Id.* at 626 (alterations in original) (quoting *O'Connell v. Commonwealth*, 48 Va. App. 719, 733 (2006)).

Bahret identified the vehicle that struck him and described the extensive damage to his truck. The driver who hit him did not stop. Officer Bing confirmed the physical damage to the truck. The damage estimate was more than $15,000. Thus, the evidence supports the jury's verdict.

C. *Felony eluding*

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

- 10 -

Code § 46.2-817(B). The offense is elevated from a misdemeanor to a felony by evidence that the eluding "interfere[d] with or endanger[ed] the operation of the [pursuing] law-enforcement vehicle or endanger[ed] a person." *Williams v. Commonwealth*, 82 Va. App. 639, 654 (2024) (alterations in original) (quoting Code § 46.2-817(B)).

"[A] person" "encompasses the entire universe of people, including the defendant." *Id.* at 655 (quoting *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008)). "'The object of the endangerment' . . . 'can be the driver himself, the police officer, or anyone else on the road [who] could be put at risk from the driver's eluding.'" *Id.* (second alteration in original) (quoting *Coleman v. Commonwealth*, 52 Va. App. 19, 24 (2008)). Officer Morse said that the pursuit occurred "just before the rush hour time" and therefore traffic was "not super heavy." Still, there were cars travelling on the path of the pursuit. Thomas drove 80 and 85 miles per hour in a 35 mile-per-hour zone, drove into on-coming traffic, and struck two vehicles. The officers had their lights and sirens engaged throughout the pursuit. Bahret saw the lights, heard the sirens, and saw the officers pursuing Thomas's truck when he was struck. The evidence supports the jury's findings that Thomas was guilty of felony eluding.

D. *False identification to law enforcement*

"Any person who falsely identifies himself to a law-enforcement officer with the intent to deceive the law-enforcement officer as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer, is guilty of a Class 1 misdemeanor." Code § 19.2-82.1. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("assumption of a false name"). Officers detained Thomas after they found him hiding in the grass near the abandoned truck. He twice identified himself to police as Javon Wilson and gave a false birthdate. Indeed, the parties stipulated that Thomas falsely identified himself to law enforcement as Javon Wilson, so we find no error in the jury's verdict.

III. *The trial court properly instructed the jury.*

"We review a circuit court's decision to grant or deny a proposed jury instruction for an abuse of discretion." *Commonwealth v. Kartozia*, ___ Va. ___, ___ (June 5, 2025) (quoting *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). "Our 'sole responsibility' in reviewing a challenge to jury instructions is to 'see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)). "A trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Id.* (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014)). "When an offered instruction is 'a correct statement of the legal principles involved and the trial court, in its discretion, could properly have given the instruction, it does not follow that it was reversible error to refuse it.'" *Id.* (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003)). "[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Watson*, 298 Va. at 207 (quoting *Payne*, 292 Va. at 869).

Thomas contends that the trial court erred when it refused his proffered jury instruction on circumstantial evidence. He argued that language[9] taken from *Williams v. Commonwealth*, 193 Va. 764 (1952), although not a model jury instruction, was a correct statement of the law and should be

---

[9] The proffered jury instruction read:

> If facts are susceptible to two different interpretations, one of which is consistent with the innocence of the accused, you cannot arbitrarily adopt the interpretation which incriminates him. Instead, the interpretation more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case.

given as an instruction. Jury instructions are intended to "fully and fairly inform the jury as to the law of the case applicable to the particular facts, and not to confuse them." *Kartozia*, ___ Va. at ___ (quoting *Honsiger v. Egan*, 266 Va. 269, 274 (2003)).

The trial court found that the circumstantial evidence instruction "instruct[s] the jury that the circumstances proved must be consistent with guilt and consistent [sic][10] with innocence" and that "a presumption, however strong, is not enough." It ruled that "the instruction on presumption of innocence and reasonable doubt in combination with the circumstantial evidence instruction covers those areas." And "while [the proposed instruction] is a correct statement of the law, . . . it is not appropriate to give, in that it highlights aspects of these two instructions." "[A] court may exercise its discretion and properly exclude an instruction that both correctly states the law and is supported by evidence when other granted instructions fully and fairly cover the relevant principle of law." *Payne*, 292 Va. at 869 (quoting *Lawlor*, 285 Va. at 256). The trial court instructed the jury that Thomas was "presumed to be innocent" and that the prosecution had to "prove each and every element of the offense beyond a reasonable doubt." The circumstantial evidence instruction stated that when the prosecution relied on circumstantial evidence, "the circumstances proved must be consistent with guilt and inconsistent with innocence."

We find that the granted instruction "fully and fairly cover[ed] a principle of law"; the trial court did not "abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton*, 293 Va. at 302 (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)).

CONCLUSION

For the foregoing reasons, the jury and the trial court's judgment is affirmed.

*Affirmed.*

---

[10] We find that this is a scrivener's error. The recitation of the instruction is accurate.

- 13 -